IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. __1:22-cv-00518__

STEVEN D. BLUM,

    Plaintiff,

v.

KISS INDUSTRIES, LLC, a Colorado limited liability company,
and COLE EVANS,

    Defendants.

## COMPLAINT

Plaintiff Steven D. Blum, through his undersigned attorneys, submits this Complaint against Defendants Kiss Industries, LLC ("Kiss" or "Kiss Industries") and Cole Evans ("Evans"), and in support states as follows.

### Parties

1.    Plaintiff Blum is an individual investor residing in Minnetonka, Minnesota.

2.    Defendant Kiss Industries is a Colorado limited liability company with its principal place of business listed as 3222 East 1st Ave, 329, Denver, CO 80206.

3.    Defendant Cole Evans is an individual residing in or around Denver, Colorado. Evans is the registered agent of Kiss.

4.    Since at least December 2016, Defendant Evans has been acting principal of Kiss. Since at least July 2018, Defendant Evans has been the CEO of Kiss and has managed all operations of Kiss.

**Jurisdiction and Venue**

5.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because a claim asserted in this civil action arises under the laws of the United States.

6.   Venue is proper under 28 U.S.C. §§ 1391(b)(1), (c)(1), and (c)(2) because Defendants are residents of Colorado. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Colorado.

**Factual Allegations**

7.   In or about the summer of 2016, Plaintiff was introduced to Defendant Cole Evans by a relative. Evans told Plaintiff that he had invented a new formulation of chewing gum that combined four sought-after benefits: whitening, freshening, and combatting both gingivitis and plaque. According to Evans, no one had created a gum with all four of these properties before. Evans told Plaintiff that he had large deals in the works with a variety of big-name companies, including United Airlines, Delta Airlines, Marriott Hotels, and a chain of upscale restaurants. The airlines supposedly planned to distribute pieces of gum to their business-class travelers, while Marriott planned to provide the gum to travelers in each hotel room and the restaurant group would hand it out to diners at its concierge desks. In fact, Evans stated that his deals with Delta, Marriott, and the restaurant chain were essentially finalized and that each of these customers had agreed to buy several million pieces of gum.

8.   On November 2, 2016, Plaintiff flew to Denver to attend an informational meeting regarding his prospective investment in Kiss. Evans told Plaintiff that the company was severely undervalued—it should have been valued at $10 million instead

of the $1.5 to $1.8 million then on the books—such that Plaintiff's investment would be extremely valuable in the long run and would provide excellent returns.

9. On December 20, 2016, Plaintiff invested $200,000.00 in Defendant Kiss Industries. Plaintiff's investment is evidenced by an Unsecured Convertible Promissory Note dated December 20, 2016 in the principal amount of $200,000.00 issued to Plaintiff pursuant to a Note Purchase Agreement dated December 20, 2016 (the "Purchase Agreement"). The Promissory Note matured on December 20, 2020 (the "Maturity Date"). The Promissory Note is attached to this Complaint as Exhibit A, and the Purchase Agreement is attached to this Complaint as Exhibit B.

10. In the initial months after Plaintiff's investment, Kiss seemed to be faring well. At a meeting in Denver on January 30, 2017, Evans told Plaintiff and other investors that Kiss was already receiving large orders. Evans's representations about Kiss's finances were false and misleading, as Plaintiff would later learn that Kiss had not executed any substantial purchase orders as of this time.

11. As the months and quarters progressed and Evans failed to provide documentation of Kiss's sales or financial condition, Plaintiff and other new investors grew concerned. On November 13, 2018, Kiss's "board of directors," (Footnote) including Plaintiff, held a meeting in Denver at which they discovered the truth regarding Evans's misrepresentations. The investors asked Evans for the particulars of the company's finances and income, but Evans obfuscated, refusing to provide any of the requested documentation.

12. On March 5, 2019, in response to Plaintiff's multiple requests for financial documentation, Evans sent Plaintiff an email titled "LONG OVERDUE Kiss Industries

info." (Ex. C.) In this email, Evans claimed that his "whole team ha[d] been very busy at work preparing inventory and shipments for some good size customers that we have recently taken on." Evans also stated that "2019 is going to be a HUGE year for us and we are going to make a great deal of money together as a team." Evans purported to attach "a deck that lays out our current business, where we've been, what we've created and where we are headed." The attached slide deck, titled "Executive Summary & Investor Prospectus through February – 2019," was an unsuccessful attempt to solicit further investment from Plaintiff for a supposed manufacturing facility in Denver. (*See* Ex. D at 3, 27.)[1] Evans also promised to provide a "deck which lays out the investment opportunity in the CBD isolate tab" by the end of the week. Upon information and belief, Evans never sent the second slide deck.

        13.    On March 28, 2019, Evans held a conference call with Plaintiff and other investors regarding patent and facility plans for a chewing gum containing CBD. Evans claimed that Kiss would be the exclusive manufacturer licensed to inject CBD into chewing gum. However, over the course of the meeting it became apparent that Kiss did not have any of the proclaimed "exclusive" licenses with respect to any patents, and had just started negotiations with respect to a license to manufacture CBD-infused chewing gum. A copy of email exchanges containing notes of the meeting is attached hereto as Exhibit E.

---

[1] This PowerPoint presentation is substantively identical to the prospectus provided to the Plaintiff-Investors in *Comi Investments, LLC v. Kiss Industries, LLC*, Civil Action No. 1:20-cv-00790-DDD-SKC, Dkt. No. 2-7 (D. Colo. filed March 25, 2020). Plaintiff requests that the Court take judicial notice of the Complaint filed in the *Comi* case, including the allegations regarding the prospectus, which can be found at paragraph 22 of that Complaint. *Id.*, Dkt. No. 2, at pp. 4-6. Plaintiff's Request for Judicial Notice is respectfully filed concurrently with this court.

14. On or around June 18, 2019, Kiss had a board meeting in Colorado. Investors were invited to attend. At the board meeting, a significant number of investors raised questions about Kiss's financials and unsupported statements by Evans that Kiss had received a $1.3 million purchase order that would be paid on July 1, 2019. When asked for confirmation of this sale at the beginning of July, Evans prevaricated, stating that the customer would wire Kiss $200,000 within two weeks. (Ex. F, July 1, 2019 Investor Emails.) Upon information and belief, no such purchase order existed based on the fact that it was never produced to the investors, despite multiple demands, and Kiss financials never reflected such a purchase order.

15. On July 1, 2019, investors including Plaintiff learned that Evans had placed an order with a manufacturer for approximately one million CBD gummies. However, the investors were not told who the customer was or whether Kiss even had enough CBD isolate to manufacture that quantity of gummies.

16. Once Plaintiff and his fellow investors and board members realized that Evans had been lying to them about Kiss's financials and operations, Plaintiff led an effort to hold an "intervention" and get Evans back on the right track. Plaintiff scheduled a meeting with Evans for July 12, 2019, explaining that he and his co-investors were "deeply concerned about your business practices and feel you have placed us in significant risk personally, professionally, and financially." (Ex. G.) Plaintiff expressed particular concerns about reports that Evans had been smuggling CBD into and out of Canada in contravention of federal law. Plaintiff also emphasized that he and his co-investors had repeatedly requested information from Evans about the company's sales and financials, but Evans had either ignored their requests or responded "with errors or

misrepresentations." (*Id.*) Plaintiff's letter requested full access to Kiss's business documents, including financials, sales, customer and supplier lists, and contracts. It also laid out a detailed strategy for examining Kiss's business and restructuring the organization to provide checks and balances on Evans's authority.

17. In July of 2019, investors discovered that Evans had sent tainted ingredients to the laboratory that formulated Kiss's chewing gum. In an email to the laboratory, formulation director and advisory board member Sanjeev Javia warned that Evans's obtainment of the ingredient was "truly unethical and illegal." There had been no safety testing performed on the material, meaning that it could have posed a risk to the health of Kiss's customers. Accordingly, the laboratory quarantined all of the gum produced for Kiss and performed chemical testing on it.

18. After July 12, 2019, the relationship between Plaintiff (as well as other investors) and Evans deteriorated, in part after issues arose over fraudulent importation of Kiss products from Canada, falsified documentation provided to customers, falsified purchase orders, shipment of products containing THC/CBD across state lines, misstatements in financials presented to investors, and lack of a compliant manufacturing facility.

19. Evans agreed to hold a conference call with investors for August 30, 2019 to discuss third-quarter financials. However, on August 27—just three days before the scheduled call—Evans cancelled the meeting without explanation. Investor Scott McGraw requested that Evans "provide updated financial statements to the investment group immediately" and expressed concern about Evans's "corporate and fiduciary responsibility to keep investors up to date on the financial wherewithal of your

organization." (Ex. H.) McGraw also emphasized that Evans "still h[e]ld our money and [was] making significant [personal??] purchases." (*Id.*) to support his lavish personal lifestyle, which included [Lavish lifestyle—trips, cars, cash] Upon information and belief, Evans did not respond to McGraw's request.

20. Plaintiff's last communication with Evans was in late 2020, when Plaintiff sent him 60-day, 30-day, and 15-day courtesy reminders of the Promissory Note's Maturity Date. (Ex. I.) Evans texted Plaintiff on November 19, 2020 asking to set up a phone call. Plaintiff agreed, but Evans then fell silent. (Ex. J.) In mid-2021, Plaintiff reported Evans to the Colorado Attorney General's office. Shortly thereafter, another Kiss investor sent Plaintiff a message on Evans's behalf, stating that Evans would be willing to talk to Plaintiff about his money if Plaintiff would "call the dogs off." (Ex. K.)

21. Pursuant to the Promissory Note, Kiss's obligation may be converted, at the option of Plaintiff, into equity of Kiss Industries on the Maturity Date of the Promissory Note. (*See* Ex. A, ¶ 3.) Plaintiff did not elect on or before the Maturity Date to convert the obligation into equity. Thus, the Promissory Note remains outstanding and payable in accordance with its terms. (*Id.* ¶ 2.)

22. By letter from counsel dated December 14, 2020, addressed to Kiss and Cole Evans, Plaintiff demanded that Defendants pay in full on the Maturity Date the outstanding principal of and all accrued interest on the Promissory Note. In that letter, Plaintiff advised Defendants that if Defendants failed to pay the Promissory Note on the Maturity Date, Plaintiff would exercise all rights and remedies available at law and in equity to collect Defendants' indebtedness, as well as all costs of collection. Plaintiff's letter is attached hereto as Exhibit L.

23. Kiss failed to pay the indebtedness or to communicate in any way with Plaintiff regarding Plaintiff's demand for payment of the Promissory Note. Accordingly, on January 15, 2021, Plaintiff filed suit against Kiss in this Court for breach of contract. (*See* Dkt. No. 1, *Blum v. Kiss Industries, LLC*, Civil Action No. 21-cv-00144-LTB (D. Colo. filed Jan. 15, 2021).) The Court granted Plaintiff's Motion for Default Judgment on November 3, 2021. *Id.*, Dkt. No. 11.

### First Claim for Relief

(Violation of Section 10(b) and Rule 10b-5 Promulgated

Thereunder)

24. This Count is asserted against Defendants based upon Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

25. As detailed above, Defendants Evans and Kiss knowingly disseminated false and misleading statements to Plaintiff in the course of a securities transaction. The statements were false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

26. The misrepresentations made by Defendant Evans and Kiss were disseminated in part utilizing instrumentalities of interstate commerce, including but not limited to telephonic phone conversations, telephonic text messages, and the internet. In addition, the investment madeby Plaintiff was transmitted through bank wire transfers.

27. Plaintiff believed Defendants' representations and expected those representations to be accurate and reliable.

28.     Plaintiff relied on the information provided to him by Kiss and Defendant Evans in determining whether to invest in Kiss.

29.     Plaintiff was not aware at the time of his investment that material information in the representations and documents were false and misleading.

30.     Defendants Evans and Kiss acted with scienter in that they knew the information they were providing to Plaintiff through the aforementioned representations and documents was materially false and misleading, including but not limited to non-existent purchase orders, non-existent customers, and non-existent manufacturing and patent licenses.

31.     As the head of operations, principal of Kiss, and CEO, Defendant Evans was in a position to know that representations he made to the Plaintiff on behalf of himself and Kiss on these topics were false and misleading.

32.     Defendants Evans and Kiss made these representations and provided these documents to Plaintiff with the expectation that he, as a potential investor, would review and rely on them in his decision to invest in Kiss.

33.     Defendants Evans and Kiss knew that the information they were providing to Plaintiff would be material to an investor's decision on whether to invest. The existence or non-existence of valid manufacturing patents and licenses is material to any potential investor in a manufacturing company. Similarly, information containing company sales and future sales would be material to any potential investor in a manufacturing company.

34.     Defendants Evans and Kiss intended for Plaintiff to rely upon these false and misleading representations and documents, as they were provided in conjunction with discussions concerning Plaintiff's decision to invest.

35. Plaintiff relied upon these false and misleading representations and documents inevaluating and ultimately electing to invest. If he had known the true state of Kiss, Plaintiff would not have chosen to invest in the company.

36. Plaintiff was damaged in an amount to be proven at trial by his justifiable reliance on Defendants' false and misleading representations and documents, including but not limited to the amount of his investment in Kiss.

**Second Claim for Relief**

(Fraud in the Sale of Securities – C.R.S. § 11-51-501)

37. As detailed above, Defendants Evans and Kiss knowingly disseminated false and misleading statements to Plaintiff in the course of a securities transaction. The statements were false and misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading.

38. Plaintiff believed the representations made to him and the contents of the documents sent to him to be accurate and reliable.

39. Plaintiff relied on the information provided to him by Kiss and Defendant in determining whether to invest in Kiss.

40. Plaintiff was not aware at the time of his investment that material information in the representations and documents was false and misleading.

41. Defendants Evans and Kiss acted with scienter in that they knew and were aware the information they were providing to Plaintiff through the aforementioned representationsand documents was materially false and misleading, including but not limited to non-existent purchase orders, non-existent customers, and non-existent

manufacturing and patent licenses.

42. As the head of operations, principal of Kiss, and CEO, Defendant Evans was in a position to know that representations he made to the Plaintiff on behalf of himself and Kiss on these topics were false and misleading.

43. Defendants Evans and Kiss made these representations and provided these documents to Plaintiff with the expectation that he, as a potential investor, would review and rely on them in his decision to invest in Kiss.

44. Defendants Evans and Kiss knew that the information they were providing to Plaintiff would be material to an investor's decision on whether to invest. The existence or non-existence of valid manufacturing patents and licenses is material to any potential investor in a manufacturing company. Similarly, information containing company sales and future sales would be material to any potential investor in a manufacturing company.

45. Defendants Evans and Kiss intended for Plaintiff to rely upon these false and misleading representations and documents, as they were provided in conjunction with discussions concerning Plaintiff's decision to invest.

46. Plaintiff relied upon these false and misleading representations and documents in evaluating and ultimately electing to invest. If he had known the true state of Kiss, Plaintiff would not have chosen to invest in the company.

47. Plaintiff was damaged in an amount to be proven at trial by his justifiable reliance on Defendants' false and misleading representations and documents, including but not limited to the amount of their investments in Kiss.

### Third Claim for Relief

(Fraud in the Inducement)

48. As detailed above, Defendants Evans and Kiss knowingly made false and misleading statements in a number of communications and documents provided to Plaintiff in connection with a possible investment in Kiss.

49. These false and misleading statements were made with the intention of inducing Plaintiff to invest in Kiss.

50. If these false and misleading statements had not been made, Plaintiff would not have invested in Kiss.

51. As a result, Plaintiff has been damaged in an amount to be proven at trial, including but not limited to the amount of his investment in Kiss.

### Fourth Claim for Relief

(Negligent Misrepresentation – Alternative Claim for Relief)

52. In the event the Court finds that the complained-of misrepresentations made by Defendants Evans and Kiss were not made with knowledge of their falsity, said statements were made in a negligent and reckless manner.

53. As set forth above, said statements were made in a number of communications and documents provided to Plaintiff in connection with a possible investment in Kiss.

54. These statements were made with the intention of inducing Plaintiff to make an investment in Kiss.

55. If these statements had not been made, Plaintiff would not have invested in Kiss.

56. As a result of these statements, Plaintiff has been damaged in an amount to be proven at trial, including but not limited to the amount of his investment in Kiss.

## REQUEST FOR RELIEF

WHEREFORE, as to all Claims for Relief, Plaintiff prays for judgment against Defendants as follows:

(a) Rescission of Plaintiff's investment, or in the alternative damages to be proven at the time of trial including but not limited to economic and non-economic damages;

(b) Pre- and post-judgment interest;

(c) Costs and attorneys' fees recoverable by statute; and

(d) Such further and necessary relief as the Court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY.

RESPECTFULLY SUBMITTED this 2nd day of March, 2022.

*s/ James P. Brogan*
**James P. Brogan**
King & Spalding LLP
1400 16th Street
16 Market Square
Suite 400
Denver, CO 80202
Telephone: (720) 535-2300
E-mail: jbrogan@kslaw.com

Attorney for Plaintiff Steven D. Blum